# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| CONTRACT TRANSPORT SERVICES, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>NEW ERA LENDING, LLC, et al.<br><br>    Defendants. | CASE NO. 1:17-CV-01322<br><br>Judge Donald C. Nugent |

**DEFENDANTS NEW ERA LENDING, LLC AND PEARL BETA FUNDING, LLC'S
REPLY IN SUPPORT OF THEIR
<u>MOTION TO DISMISS THE PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

    Christopher C. Koehler (0059384)
    ckoehler@frantzward.com
    Olivia L. Southam   (0085476)
    osoutham@frantzward.com
    FRANTZ WARD LLP
    200 Public Square, Suite 3000
    Cleveland, Ohio  44114
    (216) 515-1660 (Tel.)
    (216) 515-1650 (Fax)

    Brett Ingerman (pro hac vice)
    brett.ingerman@dlapiper.com
    Michael Bakhama (pro hac vice)
    michael.bakhama@dlapiper.com
    DLA Piper LLP (US)
    6225 Smith Avenue
    Baltimore, Maryland 21209
    (410) 580-4177 (Tel.)
    (410) 580-3177 (Fax)

    *Attorneys for Defendants New Era Lending, LLC*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................... 1
ARGUMENT .............................................................................................................................. 2
    I.    PLAINTIFFS' OPPOSITION DOES NOT ADDRESS THE FATAL DEFECTS WITH THEIR RICO AND USURY CLAIMS (COUNTS II, III & VII) ............................................................................................................ 2
    II.   THE COURT SHOULD DISMISS ALL OF PLAINTIFFS' REMAINING STATE LAW CLAIMS ............................................................................... 8
CONCLUSION .......................................................................................................................... 10

Defendants New Era Lending, LLC ("New Era") and Pearl Beta Funding, LLC ("Pearl"; collectively, "Defendants") submit this reply to Plaintiffs' Contract Transport Services, Inc. ("CTS") and William Madachik ("Madachik"; collectively, "Plaintiffs") Opposition ("Opp.") to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (the "Amended Complaint" or "Am. Compl.")

## INTRODUCTION

In their Original Motion to Dismiss, New Era and Pearl pointed out that Plaintiffs failed to state a federal RICO claim because (*inter alia*) they (1) failed to identify an "enterprise" distinct from the defendants and (2) asserted vague "group allegations" that violate Rule 9(b). Each of these fatal flaws independently requires dismissal of Plaintiffs' RICO claim. Yet two Opposition briefs and one Amended Complaint later, Plaintiffs have not even attempted to address either of these points. For these reasons alone, the Court should dismiss the RICO claim and decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

Furthermore, Plaintiffs' Opposition fails to address an even more fundamental problem: they state no predicate wrongful act necessary to sustain a RICO claim. The theme of Plaintiffs' case is substance over form. In other words, the Court should look beyond the word "sale" in the contracts at issue and examine the underlying provisions. Defendants agree wholeheartedly with Plaintiffs' plea. Its proper application requires dismissing Plaintiffs' claims ***with prejudice***, because the substantive provisions of the contracts submitted to the Court show that Defendants committed no usury as a matter of law.

Indeed, the irony of this case is that while Plaintiffs' theme may be substance over form, their argument is all form and no substance. The essence of Plaintiffs' argument is contained in

the following premise: "One must only look at the amount of money re-paid…compared with the amount of money first given…to determine that the interest…was in excess of the legal interest allowed…" ECF No. 54 at 12. This sort of reasoning exemplifies what is dead wrong about Plaintiffs' whole case. To determine whether the usury laws apply, courts cannot (as Plaintiffs suggest) merely perform a superficial comparison between the amount advanced with the total amounts collected after a transaction has been completed. Rather, courts must carefully examine the rights and obligations of the parties *ab initio*. This is because usury laws apply only when a principal sum is repayable absolutely, but not when a party is entitled only to the payment of a contingent future interest. Here, New Era and Pearl were entitled only to a contingent interests in Plaintiffs' future receipts and therefore committed no usury as a matter of law. Because Defendants committed no usury, Plaintiffs' remaining state law claims fall in a chain of dominos (assuming the Court exercises supplemental jurisdiction over them), as each one is predicated on the erroneous premise that Defendants concealed the fact that they were making usurious loans.

## ARGUMENT

I. **PLAINTIFFS' OPPOSITION DOES NOT ADDRESS THE FATAL DEFECTS WITH THEIR RICO AND USURY CLAIMS (COUNTS II, III & VII).**

Citing several leading Sixth Circuit cases, New Era and Pearl have showed that Plaintiffs failed to state a RICO claim because (*inter alia*) they (1) failed to identify an "enterprise" distinct from the Defendants themselves, and (2) made vague "group allegations" that do not satisfy Rule 9(b)'s requirement for pleading with specificity. In the cases cited, federal courts dismissed RICO claims supported by allegations that were substantially more robust than the ones contained in Plaintiffs' Amended Complaint. *See* ECF No. 30-1 at 5-9; ECF No. 42 at 1-2. Yet Plaintiffs make no attempt anywhere in their Opposition to discuss these authorities, let alone

00440050-1                                                                                                      2

EAST\146808749.1

distinguish them.  For these reasons alone, Plaintiffs' RICO claim must be dismissed.

A third and more fundamental flaw with Plaintiffs' RICO claim is their failure to plead an unlawful debt or other predicate wrongful act.  Plaintiffs cannot remedy this defect by further amending their pleading, either, because the very documents they submitted to the Court foreclose that possibility as a matter of law.  *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) (allegations which contradict documents attached to a complaint are not accepted as true).  Thus, the Court should dismiss Plaintiffs' Amended Complaint with prejudice.

In their Original Motion to Dismiss, Defendants attached an Appendix containing a voluminous body of authority explaining why contracts like the ones at issue in this case are not usurious loans.  *See* ECF. Nos. 30-2, 30-3.  As these authorities explain, to fall within the ambit of the usury laws, a party must be entitled *ab initio* to the absolute repayment of principal.  On the other hand, the usury laws do not apply when a party is entitled only to a contingent interest in future receivables, *i.e.*, an interest that varies in proportion to fluctuations in a merchant's daily revenue.  *Id.*  Like the prevailing parties in the numerous cases cited in Defendants' briefs, New Era and Pearl were entitled only to such contingent future interests in this case.  Therefore, they have made no usurious loans as a matter of law.  None of Plaintiffs' responses to this line of authority in their Opposition has any merit.

First, Plaintiffs hand-wave the caselaw by suggesting that the numerous courts that have decided analogous cases in favor of cash advance companies were hoodwinked by the word "sale."  ECF No. 54 at 5.  An examination of the cases belies this suggestion.  As set forth in Defendants' moving briefs, courts addressing this issue have come to the conclusion that

00440050-1                                                                                                                                   3

contracts like the ones in this case are not usurious loans only after carefully analyzing both the leading authorities and the specifics of the transaction at issue. *See*, *e.g.*, *Colonial Funding Network, Inc. for TVT Capital, LLC v. Epazz, Inc.*, No. 16 CIV. 5948 (LLS), 2017 WL 1944125 (S.D.N.Y. May 9, 2017).

Second, Plaintiffs assert that "[t]he defendants in this case are not legitimately buying future receivables. Legitimate buyers of receivables, generally, do not buy <u>future</u> receivables. Logically, you cannot sell an interest that you do not yet own; nor can a lien be perfected, now, in a future interest." ECF No. 54 at 6 (emphasis in original). Plaintiffs cite no authority for this assertion. They could have cited medieval English laws which restrained the alienability of contingent property interests, except for the fact that New York and Ohio – like their sister states – long ago abolished those archaic rules. *See* T.P. Gallanis, *The Future of Future Interests*, 60 Wash. & Lee. Rev. 513, 516-17 n. 16 (collecting authorities). Whether or not Plaintiffs can perceive the "logic" of modern commerce, the simple fact is that the purchase, sale and securitization of "interests that you do not yet own" is a ubiquitous commercial fact in the twenty-first century, and it is one that is fully sanctioned by the law. *Cf.* Ohio Rev. Code § 1309.204 (UCC § 9-204) (providing for the collateralization "future advances or other value, whether or not the advances or value are given pursuant to commitment"). Simply put, like much that is in their Opposition, Plaintiffs' assertion is not only unsupported; it is abject nonsense.

Third, Plaintiffs assert that Defendants assumed no risks because they took collateral in Plaintiffs' assets. ECF No. 54 at 2-4. This claim is as nonsensical as the last. Each of the contracts in this case required Defendants to adjust the payments collected to reflect the

percentage of receivables purchased. *See* ECF No. 1-3 at 1, ECF No. 1-17 at 2. As one court recently put it:

> [R]econciliation provisions allow the merchant to seek an adjustment of the amounts being taken out of its account based on its cash flow (or lack thereof). If a merchant is doing poorly, the merchant will pay less, and will receive a refund of anything taken by the company exceeding the specified percentage (which often can also be adjusted downward).

*K9 Bytes, Inc. v. Arch Capital Funding, LLC*, 56 Misc. 3d 807 (N.Y. Sup. Ct. 2017). In light of the reconciliation provisions in their contracts, Defendants assumed substantial risks because the rate at which they were entitled to be paid was indeterminate; they might have received the future receivables they purchased after an inordinately (and unpredictably) lengthy amount of time – or perhaps even not at all, if Plaintiffs' receivables declined to zero.

The fact that Defendants took a security interest in collateral did not reduce these risks. That measure merely permitted them to protect themselves in the event of default if Plaintiffs, for instance, arbitrarily refused to pay over the purchased receivables by issuing a stop payment order. Taking collateral did not change the risks flowing from the indeterminate nature of Defendants' rights; it did not change the fact that fifteen percent of zero is still zero.[1]

---

[1] Contrary to Plaintiffs' conclusory assertion that reconciliation provisions are a mere contrivance to evade the usury laws, Defendants routinely honor modification or reconciliation requests from merchants as required by their contracts. Plaintiffs cannot rely on their conclusory assertion to survive a motion to dismiss. Like the plaintiffs in *Colonial Funding*, Plaintiffs' claims must be dismissed because they do not allege that they ***ever*** made a single valid request for reconciliation or modification and that Defendants failed to honor that request. *Id.* at *3-4. And for good reason. If that had happened, then Plaintiffs would have a compelling breach of contract claim. But Plaintiffs know that that never happened, and so (to their credit) they have voluntarily withdrawn their breach of contract claim.

With one possible exception, all of the cases cited in Plaintiffs' Opposition are inapposite because the transactions at issue in those cases lacked reconciliation provisions. The possible exception, *Pearl Capital Rivis Ventures, LLC v. RDN Const., Inc.*, 54 Misc. 3d 470 (N.Y. Sup. Ct. 2016) is inapposite in any event. Even in *RDN*, the court affirmed the principle that "there can be no usury unless the principal sum is repayable absolutely." *Id.* at 474. In that case, however, the terms of the agreement were not clear; the written agreement provided to the court was "illegible," so the court was forced to rely on witness testimony. Based on this witness testimony, the court concluded that the terms of that particular agreement resembled a loan more than a purchase of receivables. *See id.* at 474-75. By contrast, like the contract in *Colonial Funding* and the numerous authorities cited in Defendants' briefs, the contracts at issue in this case plainly disclose that there was no principal sum repayable absolutely. *See* ECF No. 1-3 at 1, ECF No. 1-17 at 2.

Fourth, Plaintiffs' contention that Defendants "mis-lead [*sic*] this Court by arguing that they needed Plaintiffs to provide copies of bank statements before they could reconcile the future receivables" is itself misleading. ECF No. 54 at 5. Defendants never argued that they lacked access to Plaintiffs' bank accounts. Rather, the point is that **Plaintiffs** were contractually obligated to submit a request to trigger the reconciliation provisions. *See* ECF No. 1-3 at 1, ECF No. 1-17 at 2. And for good reason. Plaintiffs' tacit suggestion that Defendants were obligated to automatically reconcile daily payments in realtime simply because they had "access" to Plaintiffs' bank accounts not only ignores the plain language of the contracts, it is also blind to the harms that would befall merchants if such a system were implemented. This case offers a perfect example. Plaintiffs applied for and accepted numerous cash advances from at least five

different entities in a relatively short period of time.  If New Era and Pearl had automatically debited fifteen percent of every deposit into Plaintiffs' bank account, they would wrongfully have debited all of those very substantial advances, not to mention every other deposit that was not a receipt generated from Plaintiffs' daily business revenue, *e.g.*, a loan, a transfer from another one of Plaintiffs' internal bank accounts, a capital contribution from the owners, etc.  The result of imposing such system would be unmitigated disaster for the merchants that do business with merchant cash advance companies.[2]

Fifth, Plaintiffs' cite *Merch. Funding Servs., LLC v. Volunteer Pharmacy Inc.*, 55 Misc. 3d 316 (N.Y. Sup. Ct. 2016), in which a New York court invalidated an agreement purporting to be a sale of receivables.  ECF No. 54 at 12.  Plaintiffs glide over the fact that the agreement in that case lacked a reconciliation provision and thus lacked the very contingency feature that distinguishes purchases of receivables (like this case) from true loans.  *See K9 Bytes, Inc. v. Arch Capital Funding, LLC*, 56 Misc. 3d 807 (N.Y. Sup. Ct. 2017) (distinguishing *Merch. Funding* on this ground).  Thus, contrary to Plaintiffs' characterization of *Merch. Funding* as being "just like this case," the contracts in that case were polar opposite to the Pearl and New Era Agreements in the most salient respect of all.

---

[2] In the alternative, perhaps Plaintiffs are suggesting that New Era and Pearl are obligated to hire a legion of employees to pore over the thousands of bank statements every month, carefully distinguish between receipts reflecting daily business revenue and other receipts (making incessant inquiries to clarify uncertain deposits in the process), and manually adjust the amounts debited every month.  Again, this suggestion, apart from being absurd, ignores the plain language of the contracts, which requires the ***merchant*** to submit a reconciliation request.  That requirement, in turn, is a reflection of the reality that a merchant is in a far better position than Defendants to understand the source of each deposit in its own bank account.

## II. THE COURT SHOULD DISMISS ALL OF PLAINTIFFS' REMAINING STATE LAW CLAIMS.

In sum, Plaintiffs' RICO claim should be dismissed because Plaintiffs (1) fail to allege an "enterprise" distinct from the Defendants, (2) make vague "group allegations" that violate Rule 9(b) and (3) fail to plead an unlawful debt or other predicate wrongful act.  Any one of these three grounds independently requires dismissal, and the third requires dismissal with prejudice.  Plaintiffs ignore the first two grounds entirely, and their response to the third is ineffectual.  Because Plaintiffs' RICO claim is the only independent basis for this Court's subject matter jurisdiction and requires dismissal, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.  *See* ECF No. 30-1 at 9-10 (citing authorities).  In fact, even Plaintiffs now appear to concede this point in their Opposition.  *See* ECF No. 54 at 13 ("The Plaintiffs have not asked this Court to exercise supplemental jurisdiction over state law claims in the absence of the asserted federal civil RICO claims [*sic*].")

In the event that the Court chooses to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, those claims should be dismissed with prejudice.  As discussed above, there is no usury in this case as a matter of law.  Yet as Plaintiffs' Opposition makes clear, each one of Plaintiffs' remaining state law claims is predicated on the notion that Defendants concealed or misrepresented the fact that they were making a usurious loan.  *See*, *e.g.*, ECF No. 54 at 18 (asserting that "Movants failed to disclose that they provided loans at criminally usurious interest rates").

For the most part, the section of Plaintiffs' Opposition dealing with their state law claims simply repeats the conclusory assertions in their Amended Complaint, but fails to address the numerous defects with those claims identified in Defendants' Motion to Dismiss.  *See* ECF No.

54 at 17-22. Defendants therefore incorporate by reference (once again) the arguments in their Motion to Dismiss the Plaintiffs' Amended Complaint. ECF No. 42.

One new argument merits discussion here, however: Plaintiffs contend that "Both Pearl Beta and New Era Lending have language in very small print in their agreements admitting that illegal interest is charged." ECF No. 54 at 20. In support of this assertion, Plaintiffs quote a clause providing that if any court determines that Defendants have charged excessive interest, Defendants:

> shall promptly return to Merchant any interest received…in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that [Defendants] not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law.

ECF No. 54 at 21. As discussed above, under New York law, the transactions at issue in this case involve no interest whatsoever, let alone usurious interest. Moreover, even if Ohio law applied to this dispute, the transactions in this case would involve no excessive interest even if they were deemed to be loans, because Ohio does not impose a maximum rate of interest on loans to business associations such as CTS. *See* Ohio Rev. Code § 1343(B)(6)(a) ("Any party may agree to pay a rate of interest in excess of the maximum rate… when…The loan is a business loan to a business association or partnership [or] a person owning and operating a business as a sole proprietor …").[3]

Thus, the provision quoted by Plaintiffs is simply irrelevant. That provision would only apply to a proceeding initiated in a foreign court that (1) failed to respect the forum selection and choice of law clauses in the contracts, (2) deemed the transactions to be loans, and (3) deemed

---

[3] This is yet another point that Plaintiffs completely ignore in their Opposition.

00440050-1

9

the interest rates excessive under foreign law. In that unlikely event, Defendants included these provisions in their contracts so that they would be contractually obligated to "promptly return" any excess deemed interest prohibited by foreign law. It is perverse to quote a provision demonstrating Defendants' intent to comply with the law as evidence of their intent to break it.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court dismiss Plaintiffs' Amended Complaint.

Dated: September 26, 2017

Respectfully submitted,

*/s/ Christopher C. Koehler*
Christopher C. Koehler (0059384)
ckoehler@frantzward.com
Olivia L. Southam (0085476)
osoutham@frantzward.com
FRANTZ WARD LLP
200 Public Square, Suite 3000
Cleveland, Ohio 44114
(216) 515-1660 (Tel.)
(216) 515-1650 (Fax)

*/s/ Brett Ingerman*
Brett Ingerman (pro hac vice)
brett.ingerman@dlapiper.com
Michael Bakhama (pro hac vice)
michael.bakhama@dlapiper.com
DLA Piper LLP (US)
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-4177 (Tel.)
(410) 580-3177 (Fax)

*Attorneys for New Era Lending, LLC and Pearl Beta Funding, LLC*